IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-341-D

GEORGE KARIUKI,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )           **ORDER**
                                    )
STATE OF NORTH CAROLINA             )
DEPARTMENT OF INSURANCE,            )
                                    )
                Defendant.          )

George Kariuki ("Kariuki" or "plaintiff") alleges that the North Carolina Department of Insurance ("NCDOI" or "defendant") terminated his probationary employment as a senior insurance company examiner because of his race, national origin, and age. The NCDOI responds that it terminated Kariuki's probationary employment due to poor performance and seeks summary judgment. As explained below, the court grants the NCDOI's motion for summary judgment.

I.

In December 2016, the NCDOI hired Kariuki (age 47) as a senior insurance company examiner. See [D.E. 90] ¶¶ 1–3.[1] Throughout Kariuki's employment, he was a probationary

---

[1] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a corresponding numbered paragraph in the opposing statement." E.D.N.C. Civ. R. 56.1(a)(2). Kariuki did not specifically controvert the NCDOI's statement of undisputed material facts. See [D.E. 99, 100, 101, 102, 103, 107]. Thus, the court sustains the NCDOI's objection to Kariuki's failure to comply with Local Civil Rule 56.1 [D.E. 108], and the NCDOI's statement of undisputed material facts is deemed admitted. See Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 & n.1 (E.D.N.C. Mar. 15, 2017) (unpublished).

employee who was terminable at will. See id. ¶ 3; see Prickett v. N.C. Off. of State Hum. Res., 268 N.C. App. 415, 423, 836 S.E.2d 773, 779 (2019). Kariuki is originally from Kenya but was a citizen of the United States during his employment with the NCDOI.

When the NCDOI hired Kariuki, the NCDOI knew his race and national origin. See Smith Aff. [D.E. 91-1] ¶ 10. While Kariuki worked for the NCDOI, Tony Riddick ("Riddick") (an African American male) was the Deputy Commissioner of the Financial Examination Section. See id. ¶¶ 7–8. Monique Smith ("Smith") (a 47-year-old African American female) was the Chief Examiner of the Financial Examination Section and was Kariuki's manager. See id. ¶¶ 5–6. William Keely ("Keely") (a 59-year-old white male) was an insurance company manager with the NCDOI and supervised Kariuki on certain financial examinations. See Keely Aff. [D.E. 91-2] ¶¶ 3–8. Herb Maltba ("Maltba") (a 59-year-old white male) also was an insurance company manager with the NCDOI and supervised Kariuki on certain financial examinations. See Smith Aff. [D.E. 91-1] ¶ 9.

From January to June 2017, Kariuki met the NCDOI's expectations. See id. ¶ 13; Keely Aff. [D.E. 91-2] ¶ 10; [D.E. 91-3] 1–12. In July 2017, Kariuki's performance deteriorated. See Smith Aff. [D.E. 91-1] ¶¶ 14–15; Keely Aff. [D.E. 91-2] ¶¶ 11–12. In early August 2017, Keely, Smith, and Riddick gave Kariuki a written performance evaluation for July 2017 and explained in detail why Kariuki's performance did not meet expectations. See [D.E. 91-3] 13–14. Kariuki's work was "poor quality requiring additional time to review due to needed revisions." Id. at 13. The performance evaluation also detailed "time management issues" and concerns about "monitoring" the "overall time budget and related travel expenses" for an ongoing examination. Id. at 13–14. Kariuki responded to the written performance evaluation and said nothing about discrimination. See id. at 14.

In August and September 2017, Kariuki's performance met expectations. See id. at 15–18.

2

In October 2017, Kariuki's performance again deteriorated. On November 7 and 8, 2017, Keely, Smith, and Riddick completed a written performance evaluation of Kariuki for October 2017. See id. at 19–21. The evaluation concluded that Kariuki's work did not meet expectations as to the quality of his work. See id. The evaluation detailed Kariuki's poor quality work, insufficient knowledge of auditing, and inability to complete work paper documentation. See id. at 19. The evaluation explained how Kariuki's poor performance required Smith to revise reports and delayed the outcome of an examination. See id. The evaluation also described Kariuki's continued poor performance as a senior insurance company examiner in late October 2017. See id. Specifically, Kariuki's work paper documentation did not meet the expected examination documentation requirements. See id. Kariuki also failed to use CPA workpapers effectively and thereby wasted time. See id.

The October 2017 performance evaluation also concluded that Kariuki was not meeting expectations as to the quantity of his work. See id. at 20. The performance evaluation detailed Kariuki's lack of auditing knowledge and inability to apply required guidance to his work paper documentation. See id. As for work habits, the October 2017 performance evaluation stated that Kariuki did not meet expectations concerning "overall work habits" because he did not demonstrate sufficient auditing knowledge to complete his work within reasonable time frames. Id. at 21.

Kariuki responded to the written evaluation. See id. at 22–27. Kariuki did not allege discrimination. See id. Rather, Kariuki "acknowledge[d] I should have done better." Id. at 22. Kariuki also expressed regret for "any inconvenience[] I caused to my supervisors, Chief Examiner and the Department." Id.

In November 2017, due to Smith's concerns about Kariuki's repeated inability to meet work performance expectations as a senior insurance company examiner, Smith met with Riddick to

3

discuss Kariuki's job performance. See Smith Aff. [D.E. 91-1] ¶ 22. Smith and Riddick agreed that Kariuki's performance did not meet what the NCDOI expected for a senior insurance company examiner. See id. ¶ 23. Riddick suggested terminating Kariuki's probationary employment for poor performance. See id. Smith agreed.

Keely and Maltba were not present at the meeting where Riddick and Smith decided to terminate Kariuki's probationary employment for poor performance. See id. ¶ 24. Moreover, Keely and Maltba were not involved in any way in the termination decision. See id.

Riddick and Smith received approval from the NCDOI Senior Deputy Commissioner and the NCDOI Human Resources Division to terminate Kariuki's probationary employment for poor performance. See id. ¶ 26. On November 29, 2017, Smith and Riddick met with Kariuki to notify him that the NCDOI terminated his probationary employment for poor performance. See id. ¶ 27.

Kariuki contends that the NCDOI terminated his employment because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). On June 25, 2021, the NCDOI moved for summary judgment [D.E. 88], filed a memorandum in support [D.E. 89], and filed a statement of undisputed material facts [D.E. 90] and an appendix [D.E. 91]. On June 28, 2021, the court notified Kariuki about defendant's motion for summary judgment, his response deadline, and the need for his response to comply with Federal Rule of Civil Procedure 56 and Local Civil Rules 7.2 and 56.1. See [D.E. 92]. On July 26, 2021, Kariuki responded in opposition [D.E. 99], but he did not comply with Local Civil Rule 56.1. See id.; see also [D.E. 100, 101, 102, 103, 107].

On July 29, 2021, Kariuki filed a motion asking for leave to amend his response in opposition to the NCDOI's motion for summary judgment to make it comply with Local Rule 56.1 [D.E. 104].

4

He also filed an amended response to the NCDOI's motion to dismiss [D.E. 105], a memorandum in support [D.E. 105-1], and nine exhibits [D.E. 105-1–105-10]. On August, 10, 2021, the NCDOI filed responses opposing Kariuki's motion and amended response [D.E. 109, 110]. On August, 25, 2021, Kariuki filed replies to both responses [D.E. 111, 112].

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot

5

create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

Title VII prohibits an employer from taking adverse employment action against an employee "because of" such individual's race or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII violation in two ways. First, a plaintiff can show through direct evidence that illegal discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). If a plaintiff lacks direct evidence (as in this case), a plaintiff can alternatively proceed under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).

"The McDonnell Douglas framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to failure to promote, failure to hire, termination, and retaliation claims under Title VII. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004); Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997), abrogated in part on other grounds by Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134 (4th Cir. 2007).

6

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509-11 (1993). If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); King v. Rumsfeld, 328 F.3d 145, 150-54 (4th Cir. 2003). A plaintiff can do so by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see Reeves, 530 U.S. at 147.

In analyzing the record concerning pretext, the court does not sit to decide whether the employer in fact discriminated against the plaintiff on the basis of race. See, e.g., Holland v. Wash. Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279-80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny. Under Reeves and its Fourth Circuit progeny, a plaintiff may not "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of [race or national origin]." Laber v. Harvey, 438 F.3d 404, 430-31 (4th Cir. 2006) (en banc). In certain cases, however, the factfinder may infer illegal discrimination from the articulated reason's falsity. See id. at 431; Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000).

Kariuki alleges that NCDOI terminated his employment because of his race and national

7

origin. Under McDonnell Douglas, to establish a prima facie case of termination based on race or national origin, a plaintiff must show (1) he is a member of a protected class, (2) he was discharged, (3) he was fulfilling his employer's legitimate expectations at the time of his discharge, and (4) he was replaced by someone outside the protected class. See, e.g., Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015), abrogated in part on other grounds by Bing v. Brivo Sys., LLC, 959 F.3d 605 (4th Cir. 2020); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Tahir v. Sessions, No. 5:16-CV-781-D, 2017 WL 1735158, at *4 (E.D.N.C. May 2, 2017) (unpublished), aff'd, 703 F. App'x 211 (4th Cir. 2017) (per curiam) (unpublished).

As for the first element, Kariuki is a member of a protected class due to his race and national origin. As for the second element, the NCDOI discharged Kariuki. As for the fourth element, the court assumes without deciding that the NCDOI replaced Kariuki with a 30- or 31-year-old white female. See [D.E. 99] 2, 7.

The parties dispute the third element of Kariuki's prima facie case. The NCDOI contends that Kariuki has failed to prove his prima facie case because he was not meeting the NCDOI's legitimate expectations at the time of his discharge. In support, the NCDOI cites Kariuki's performance reviews for July and October 2017, Smith's affidavit, and the absence of countervailing evidence from Kariuki. In opposition, Kariuki makes four arguments.

First, Kariuki argues that he was meeting the NCDOI's legitimate expectations at the time of his discharge but that Keely conducted his performance evaluations in a negligent and discriminatory manner due to his race, national origin, and age. See [D.E. 101] 7–8. Kariuki, however, presents no evidence to support this conclusion beyond his own speculation. Moreover, Kariuki's perception of his own performance does not create a genuine issue of material fact.

8

Rather, the perception of the employer's decisionmakers (i.e., Smith and Riddick) controls. See King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith v. Flax, 618 F.2d 1062, 1066–67 (4th Cir. 1980). Even though a plaintiff may contest the factual accuracy of an employer's critiques, the issue is whether the employer's decisionmakers believed the critique to be true. See Holland, 487 F.3d at 215–17; Hill, 354 F.3d at 293–94. Furthermore, Kariuki's job evaluations (particularly for October 2017) show that he was not meeting the NCDOI's legitimate employment expectations at the time of his discharge, especially Smith's expectations. Furthermore, even if Keely believed that Kariuki should have had more time to complete one project, see [D.E. 99-5, 99-7], Keely's opinion does not create a genuine issue of material fact concerning Kariuki's performance or illegal discrimination. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Flax, 618 F.2d at 1066–67.

Second, Kariuki argues that the NCDOI denied him training, reimbursement, and advancement opportunities. See [D.E. 101] 9. Kariuki, however, has presented no evidence that the NCDOI denied him training, reimbursement, or advancement opportunities or that it did so because of his race or national origin. The evidence is to the contrary. See [D.E. 90] ¶¶ 18–22. Thus, the argument does not create a genuine issue of material fact concerning whether Kariuki was meeting the NCDOI's legitimate employment expectations at the time of his discharge. The argument also does not create a genuine issue of material fact concerning illegal discrimination.

Third, Kariuki argues that the NCDOI "segregated" him and told him "to work off-site from other team members." [D.E. 101] 9–10. The record, however, shows that in September 2017, Smith assigned Kariuki and Keely to work on an ongoing financial examination of an insurance company in Raleigh. See Smith Aff. [D.E. 91-1] ¶ 35; Keely Aff. [D.E. 91-2] ¶ 25. Because Smith added Kariuki and Keely to the financial examination after the examination had begun and because

9

Case 5:18-cv-00341-D   Document 113   Filed 08/25/21   Page 9 of 16

workspace and security access for NCDOI examiners at the insurance company in Raleigh was a concern, Smith told Keely and Kariuki to work from the NCDOI office. See Smith Aff. [D.E. 91-1] ¶¶ 36, 38; Keely Aff. [D.E. 91-2] ¶¶ 25–27. Smith also told Keely and Kariuki to communicate with her first if either needed to visit the insurance company. See Smith Aff. [D.E. 91-1] ¶ 36; Keely Aff. [D.E. 91-2] ¶ 26. This evidence does not create a genuine issue of material fact concerning whether Kariuki was meeting the NCDOI's legitimate employment expectations at the time of his discharge or illegal discrimination.

Fourth, Kariuki argues that on November 29, 2017, immediately before Smith and Riddick terminated his employment, Riddick asked Kariuki what his country of origin was. See [D.E. 101] 11–12; [D.E. 99] 12. The question itself does not reflect discriminatory animus or undermine the details in Kariuki's poor performance evaluations. Moreover, and in any event, even if Riddick asked Kariuki this question, Smith and Riddick already had made the decision to terminate Kariuki's employment. See Smith Aff. [D.E. 91-1] ¶¶ 23, 26–27. Thus, this evidence does not create a genuine issue of material fact concerning whether Kariuki was meeting the NCDOI's legitimate employment expectations at the time of his discharge or illegal discrimination.

The same-actor inference also seriously undermines Kariuki's race and national origin discrimination claim. Under the same-actor inference, when one individual hires and fires a plaintiff, a "strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991); see Taylor v. Va. Union Univ., 193 F.3d 219, 231 (4th Cir. 1999) (en banc), abrogated in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 214–15 (4th Cir. 1994); Turner v. Sunstates Sec., LLC, No. 5:17-CV-363-D, 2019 WL 3298850, at *5 (E.D.N.C. July 22, 2019)

10

(unpublished). When the NCDOI (through Riddick and Smith) hired Kariuki in December 2016, the NCDOI knew Kariuki's race and national origin. If Riddick (an African American) and Smith (an African American) were filled with bias based on Kariuki's race or national origin, they would not have hired him.

Even viewing the evidence in the light most favorable to Kariuki, Kariuki has not established his prima facie case. Accordingly, the court grants summary judgment to the NCDOI on Kariuki's race and national origin discrimination claims.

Alternatively, even if Kariuki established his prima facie case, the burden would shift to the NCDOI to assert a legitimate and nondiscriminatory reason for discharging Kariuki. See Hicks, 509 U.S. at 509–11; Burdine, 450 U.S. at 254. The NCDOI has done so. Poor performance is a legitimate and nondiscriminatory reason for terminating a person's employment. See, e.g., Hill, 354 F.3d at 286.

The burden then shifts back to Kariuki to prove by a preponderance of the evidence that the NCDOI's stated reason was a pretext for race or national origin discrimination. See id. at 285. Kariuki can do so by showing the NCDOI's explanation "is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race or national origin] discrimination." Mereish, 359 F.3d at 336 (quotation omitted); see Reeves, 530 U.S. at 147. However, a plaintiff cannot seek to expose a rationale as pretextual "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); see Rowe, 233 F.3d at 831. "The former would not create a 'genuine' dispute." Hux, 451 F.3d at 315 (quoting Matsushita Elec. Indus. Co., 475 U.S. at 586–87). The "latter would fail to be 'material.'" Id. (quoting Anderson, 477 U.S. at 248). "[M]ere mistakes of fact are not evidence of unlawful

11

discrimination." Price v. Thompson, 380 F.3d 209, 214 n.1 (4th Cir. 2004), abrogated on other grounds by Foster v. Univ. of Md.-E. Shore, 787 F.3d 243 (4th Cir. 2015). After all, a "[p]retext is a lie, not merely a mistake." Id. (quotation and citation omitted).

Kariuki strenuously disagrees with the NCDOI's opinion that he was not performing up to the standard that the NCDOI expected for a senior insurance company examiner in November 2017. This court's focus, however, "is solely on whether [the termination] decision was the result of [illegal] bias." Mereish, 359 F.3d at 339. Even viewing the evidence in the light most favorable to Kariuki, Kariuki has failed to create a genuine issue of material fact that the NCDOI's reason for terminating his employment was pretextual. See Holland, 487 F.3d at 217–18; Hux, 451 F.3d at 317–19; Diamond, 416 F.3d at 319–20; Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 270–72 (4th Cir. 2005); Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189–90 (4th Cir. 2004); Mereish, 359 F.3d at 336–39; Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 722–23 (4th Cir. 2002); Rowe, 233 F.3d at 830–31; Hawkins, 203 F.3d at 279–80; Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998); DeJarnette v. Corning Inc., 133 F.3d 293, 298–300 (4th Cir. 1998); Evans, 80 F.3d at 960–61; Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1129–30 (4th Cir. 1995); Jiminez v. Mary Wash. Coll., 57 F.3d 369, 383–84 (4th Cir. 1995); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607–08 (E.D.N.C. 2006). It was not. Thus, the court grants summary judgment to the NCDOI on Kariuki's race and national origin termination claim.

B.

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish an ADEA claim in two ways. First, an employee may produce direct

12

evidence showing that an employer's conduct was motivated by age discrimination. See, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009); Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019); Mereish, 359 F.3d at 334. Second, an employee may proceed under the burden-shifting framework in McDonnell Douglas. See Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d at 334; Flax, 618 F.2d at 1066–67.

To establish a prima facie case of disparate treatment under the ADEA, a plaintiff must show that (1) he was a member of the protected class, i.e., "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) he was meeting his employer's legitimate expectations at the time of the adverse employment action; (3) the employer took adverse employment action against him; and (4) the employer took that adverse employment action under circumstances giving rise to an inference of age discrimination. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Hill, 354 F.3d at 285; Howard, 262 F. Supp. 3d at 335; Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 739–40 (E.D.N.C. 2012).

As for Kariuki's prima facie case, Kariuki was 47 years old and in the protected class when the NCDOI terminated his employment. Termination is an adverse employment action, and the court assumes without deciding that the NCDOI replaced Kariuki with an employee not in the protected class. Thus, the court again focuses on whether Kariuki was meeting the NCDOI's legitimate expectations when the NCDOI terminated his employment.

As discussed, an employee's perception of his own performance cannot establish that he was meeting his employer's legitimate expectations. Rather, the employer's perception controls. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Flax, 618 F.2d at 1067. Even though a plaintiff may contest the factual accuracy of an employer's critiques, the issue is whether the employer's decisionmakers believed the critiques to be true. See Holland, 487 F.3d at 215–17; Hill,

13

354 F.3d at 293–94. Moreover, the court does "not sit as a super-personnel department weighing the prudence of employment decisions." Anderson, 406 F.3d at 272 (quotation omitted). An employer can set its own performance standards so long as "such standards are not a 'mask' for discrimination." Beall, 130 F.3d at 619; see McDougal-Wilson, 427 F. Supp. 2d at 607.

Even viewing the evidence in a light most favorable to Kariuki, no rational jury could find that Kariuki was meeting the NCDOI's legitimate expectations when the NCDOI terminated his employment. See [D.E. 90] ¶¶ 1–17, 24–29; Smith Aff. [D.E. 91-1]; Keely Aff. [D.E. 91-2]; [D.E. 91-3] 13–14, 19–21. Moreover, Kariuki's perception of his own performance does not create a genuine issue of material fact concerning whether he was meeting the NCDOI's legitimate expectations when terminated. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Flax, 618 F.2d at 1067. He was not. Accordingly, the court grants summary judgment to the NCDOI on Kariuki's ADEA claim.

Alternatively, even assuming that Kariuki demonstrated a prima facie case of age discrimination, the NCDOI articulated a legitimate, nondiscriminatory reason for terminating Kariuki—his poor performance. Thus, the burden shifts to Kariuki to demonstrate a genuine issue of material fact about pretext.

Even viewing the evidence in the light most favorable to Kariuki, no rational jury could find that the NCDOI's reason was pretextual or that, but for his age, the NCDOI would not have terminated Kariuki. See Gross, 557 U.S. at 180; Reeves, 530 U.S. at 141–42; Gentry v. E. W. Partners Club Mgmt. Co., 816 F.3d 228, 234 (4th Cir. 2016); E.E.O.C. v. Balt. Cnty., 747 F.3d 267, 273 (4th Cir. 2014); Wood, 914 F. Supp. 2d at 740. In analyzing pretext, the "crucial issue" is whether "an unlawful discriminatory motive for a defendant's conduct [exists], not the wisdom or folly of its business judgment." Jiminez, 57 F.3d at 383. Kariuki's speculation about pretext is not

14

Case 5:18-cv-00341-D   Document 113   Filed 08/25/21   Page 14 of 16

enough. See, e.g., Holland, 487 F.3d at 216–18; Mereish, 359 F.3d at 336–39; Hawkins, 203 F.3d at 280–81. Moreover, "[i]t is not . . . the function of this court to second guess the wisdom of business decisions." E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); see Mereish, 359 F.3d at 339. "Duty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked with authority to strip employers of their basic business responsibilities." Hux, 451 F.3d at 315.

In opposition, Kariuki repeats the first three arguments that he made about race and national origin discrimination. Those arguments, however, fare no better with respect to age discrimination. Kariuki also argues that between May 2017 and October 2017, Keely often stated, "younger employees are better." Am. Compl. [D.E. 20] ¶ 4. Kariuki then argues that Keely's alleged statements reflect discriminatory animus and warrant a trial on his ADEA claim. See [D.E. 101] 10–11.

Even if Keely made these ambiguous statements, Keely was not Kariuki's manager. Smith was. Moreover, Keely played no role in the NCDOI's decision to terminate Kariuki's employment. See Smith Aff. [D.E. 91-1] ¶¶ 22–27; Keely Aff. [D.E. 91-2] ¶ 19. Thus, Keely's alleged stray remark about "younger employees" being "better" does not create a genuine issue of material fact about age discrimination or pretext. See, e.g., Rayyan v. Va. Dep't of Transp., 719 F. App'x 198, 202 (4th Cir. 2018) (per curiam) (unpublished); O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548–49 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511–12 (4th Cir. 1994); Clay Printing Co., 955 F.2d at 942.

The court declines to attribute Keely's alleged ambiguous statement that "younger employees are better" to the decisionmakers Smith or Riddick. See Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010). "[T]hat any distasteful comments will arise in the workplace"

15

is regrettable. Id. "[B]ut that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." Id.; see Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608–09 (4th Cir. 1999), overruled on other grounds by Desert Palace, Inc., 539 U.S. 90 (2003); Cherry v. Elizabeth City State Univ., 147 F. Supp. 3d 414, 421–22 (E.D.N.C. 2015); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012). Even viewing the evidence in the light most favorable to Kariuki, Kariuki has not established a prima facie case of age discrimination or created a genuine issue of material fact about pretext. Thus, the court grants the NCDOI's motion for summary judgment on Kariuki's age discrimination claim.

### III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 88]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. In light of the court's decision to grant defendant's motion for summary judgment and notwithstanding plaintiff's misconduct at his deposition, the court DENIES defendant's motion to dismiss [D.E. 85], DENIES as meritless plaintiff's motion in opposition to defendant's motion to dismiss [D.E. 98] and motion for summary judgment [D.E. 100], and DENIES as meritless plaintiff's other motions [D.E. 104, 105]. The clerk shall close the case.

SO ORDERED. This 25 day of August, 2021.

JAMES C. DEVER III
United States District Judge